# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GLENN DUET** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 09-3321** |
| **FALGOUT OFFSHORE, LLC, ET AL.** | * | **SECTION "L"** |

## ORDER & REASONS

Before the Court is Plaintiff Glenn Duet's Motion to Strike Jury Trial Demand of Third-Party Defendant (Rec. Doc. No. 13). For the following reasons, this Motion is GRANTED.

## I. BACKGROUND

The present matter arises out of injuries sustained while working aboard a vessel. On April 12, 2007, Plaintiff Glenn Duet was employed by Defendants Falgout Offshore, LLC ("Falgout"), and Minnie Falgout, LLC ("Minnie"), as a captain on the supply boat M/V Minnie Falgout. While aboard the M/V Minnie Falgout in navigable waters in the Gulf of Mexico, Plaintiff sustained injuries when he slipped and fell due to a slippery, petroleum-based substance that was on the deck. The M/V Minnie Falgout was alongside an offshore platform owned by Third Party Defendant Nabors Offshore Corp. ("Nabors") at the time of the injury. Plaintiff alleges that the substance in which he slipped was dumped on to the vessel by an operator or other contractor working aboard the offshore platform. Prior to the accident at issue, Plaintiff sustained injuries from two other slip and fall injuries on the deck of the M/V Minnie Falgout as a result of liquids disposed of on the deck by the vessel's employees.

Plaintiff filed suit against the Defendants alleging his injuries were the result of negligence for failing to furnish a safe workplace. Plaintiff filed his original Complaint on April

20, 2009. He subsequently filed a First Amended Complaint characterizing the matter as one in admiralty brought pursuant to Federal Rule of Civil Procedure 9(h). Plaintiff seeks monetary damages, maintenance and cure, attorneys fees, and compensatory damages. Defendants filed an Answer, Counter-claim, and Third-party Complaint. Pursuant to Rule 14(c), Defendants tendered Nabors as an original defendant. In response, Nabors filed an Answer to the Third-party Complaint and First Amended Complaint.

Plaintiff did not make a jury demand in his original Complaint or First Amended Complaint, but with regard to the latter, characterized his suit as one in admiralty under Rule 9(h). Defendants did not make jury demands in any of their responsive pleadings. Nabors demanded trial by jury on all issues in both its Answer to the Third-party Complaint and Answer to the First Amended Complaint.

## II.  PRESENT MOTION

Plaintiff filed a Motion to Strike Jury Trial Demand (Rec. Doc. No. 13). Plaintiff claims that jurisdiction in the instant matter is purely maritime jurisdiction because no diversity of citizenship exists and Plaintiff has pled the matter as a proceeding under Rule 9(h). Accordingly, Plaintiff argues that Nabor's demand for jury trial should be stricken.

Defendants filed a Response (Rec. Doc. No. 15), stating that they have no opposition to Plaintiff's Motion.

Third-party Defendant Nabors filed a Response in opposition to Plaintiff's Motion (Rec. Doc. No. 21). Nabors first argues "that the facts of the case in no way squarely fit within the exclusive jurisdiction of Admiralty law." *Id.* Nabors concedes that Plaintiff's claims against Defendants are clearly governed by maritime law. However, Nabors argues that Plaintiff's

claims against it are governed by the Outer Continental Shelf Lands Act ("OCSLA"), which applies the law of the adjacent state-here, Louisiana. Nabors reasons that it is not a vessel or vessel owner under maritime law, but rather that any liability arises from its platform operations. It notes that if the injuries had occurred on its rig, Plaintiff's claims against Nabors would clearly be governed by Louisiana law because the rig was aboard a fixed platform and located on the outer continental shelf. Although Nabors concedes that Plaintiff's injuries occurred aboard the vessel, it argues that a combination of vessel and platform-related activities combined to cause the injuries and thus OCSLA governs Plaintiff's claims against it and Nabors is entitled to make its jury demand.

### III.  LAW & ANALYSIS

#### A.  Right to Jury Trial Under Rule 9(h) & Rule 14(c)

In the present matter it is undisputed that Plaintiff has designated his claims against Defendants Falgout Offshore, LLC and Minnie Falgout, LLC as claims in admiralty under Federal Rule of Civil Procedure 9(h), thereby invoking his right to a non-jury trial. Federal Rule of Civil Procedure 9(h) provides that,

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated. Fed. R. Civ. Proc. 9(h).

Because Plaintiff has designated these claims under admiralty and maritime jurisdiction pursuant Rule 9(h), there is no right to have these claims tried by a jury. Fed. R. Civ. Proc. 38(e); *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1216 (5th Cir. 1986).

Plaintiff's claims against Third-Party Defendant Nabors arose as a result of the

Defendants bringing Nabors into the litigation pursuant Rule 14(c). Rule 14(c) provides that,

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant...may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable–either to the plaintiff or to the third-party plaintiff–for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. Proc. 14(c)(1).

The Fifth Circuit requires that under Rule 14(c), the third-party plaintiff "assert an action sounding in admiralty or maritime" law. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009); *see also McDonough Marine Service v. Royal Ins. Co.*, 2001 WL 576190, *4 (E.D. La. May 25, 2001)("[T]he third-party action [under Rule 14(c)] must be cognizable in admiralty"). Accordingly, Nabors cannot be a proper Rule 14(c) party unless Plaintiffs or Defendants' claims against it arise under admiralty or maritime law. In its Answers, Nabors did not contest being brought into the litigation pursuant to Rule 14(c) on the basis that OCSLA governs the claims against it. Nabors for the first time raises this issue in the context of the present Motion challenging its jury trial request. However, as the following section discusses, the present claims against Nabors are governed by federal maritime law; therefore, Nabors is properly within the jurisdiction of the Court pursuant to Rule 9(h) and Rule 14(c) and the claims against Nabors are not triable by jury.

### B. Federal Maritime Law & OCSLA

At issue in the present Motion is whether the claims against Nabors, who was brought into the case as a Third-Party Defendant pursuant to Rule 14(c), are to be heard with or without a jury. Underlying this issue is whether the Court's jurisdiction over Nabors arises from federal maritime law or the Outer Continental Shelf Lands Act ("OCSLA"). As discussed above, if the claims come under federal maritime law Nabors is precluded from electing a jury trial.

However, state law applies as surrogate federal law under OCSLA if the following three conditions are met, "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law." *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 783 (5th Cir. 2009)(quoting *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990)). The applicable state law would be Louisiana state law because Louisiana is the adjacent state. *See Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 481 (1981); *see also Bartholomew v. CNG Producing Co.*, 832 F.2d 326, 328 (5th Cir. 1987). Under Louisiana state law, Nabors is entitled to election of trial by jury. *Henson v. Odyssea Vessels, Inc.*, 2007 WL 3343011, *1 (E.D. La. Nov. 8, 2007)(citing *Solet v. CNG Producing Co.*, 908 F.Supp 375, 377 (E.D. La. 1995)).

At the center of the parties' arguments is whether the claims against Nabors are governed by federal maritime law or OCSLA. Accordingly, the Court will first address the second prong of the foregoing OCSLA test, whether federal maritime law applies of its own force to the claims against Nabors. The United States Supreme Court has set forth the requirements for application of federal maritime law over a tort claim. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Known as the *Grubart* test, the Court provides a two step test for the application of federal maritime law. *Id*. The Court describes this test as follows,

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. §1331(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must 'assess the general features of the type of incident involved,' to determine whether the incident has

'a potential disruptive impact on maritime commerce.' Second, a court must determine whether the 'general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.' *Id* (internal citations omitted).

Under the first step of the *Grubart* test, location, the Fifth Circuit requires that a court, in determining whether a tort occurred on navigable waters, look to where the alleged wrong took effect rather than to the locus of the allegedly tortious conduct. *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry*, 183 F.3d 453, 456 (5th Cir. 1999); *N.Y. Marine & Gen. Ins. Co. v. McDermott Intern. Inc.*, 2005 WL 1400450, at *6 (E.D. La. Jun. 1, 2005); *see e.g. Chicot Land Co. v. Kelly*, 485 F.2d 520, 521-26 (5th Cir. 1973)(land occupiers on shore who shot at and injured deer poachers fleeing in boat on Mississippi River were liable under maritime law). The emphasis of this analysis is on where the injury occurred, and not where the wrongful conduct took place. *Id.* The parties do not dispute that Plaintiff suffered his injury on the vessel while it was in navigable waters. Because the tort occurred on navigable waters, the location requirement is satisfied.

Under the second step of the *Grubart* test, connection with maritime activity, there are two inquiries. First, the incident must have "a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534. Second, the "general character of the activity giving rise to the incident" must bear a substantial relationship to traditional maritime activity. *Id*.

Turning to the first inquiry, a potentially disruptive impact on maritime commerce, a district court must determine "whether the 'general features' of the incident were 'likely to disrupt commercial activity.'" *Id*. at 538 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363 (1990)). The Fifth Circuit provides that in making this determination, "courts should characterize the activity at issue at an "intermediate level of generality." *Scarborough v. Clemco Industries*, 391

F.3d 660, 664-65 (5th Cir. 2004)(quoting *Grubart*, 513 U.S. at 534)(characterizing a seaman's contraction of silicosis caused by a defective mask worn while sandblasting aboard a vessel as "injury to a Jones Act seaman due to the negligence of a non-employer").

The Fifth Circuit in *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995), found that a plaintiff's injuries during repair and maintenance work on a jack-up rig in navigable waters constituted a potentially disruptive impact on maritime commerce. The Fifth Circuit reasoned that "worker injuries...can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel." *Id*. Here, although the facts are not fully developed, *see* Transcript of Oral Argument, at 6, *Duet v. Falgout Offshore, LLC*, No. 09-3321, it is clear that Plaintiff was working as a captain on a vessel when he slipped and fell in an unidentified slippery substance that had come from Nabor's adjacent offshore platform. The Court's description of the incident at an intermediate level of generality as required by *Grubart*, is as injury to a captain caused by the disposal of liquids on the deck of a vessel. Undoubtedly, injuries to the captain, the worker responsible for navigating the vessel, from this disposal would "have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel." *Coats*, 61 F.3d at 1119. Accordingly, the incident at issue constitutes a potentially disruptive impact on maritime commerce under *Grubart*.

Turning to the second inquiry, whether the general character of the activity giving rise to the incident bears a substantial relationship to traditional maritime activity, a district court must determine whether "at least one tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." *Grubart,* 513 U.S. at 541. The meaning of "traditional maritime activity" has been

interpreted broadly, and "extends at least to any other activities traditionally undertaken by vessels, commercial or noncommercial." *Sisson*, 497 U.S. at 376. In the present matter, Defendants Falgout and Minnie, who employed Plaintiff on the vessel, are alleged to be negligent for failing to furnish a safe workplace. Employing a captain on a vessel and allegedly failing to furnish a safe workplace upon that vessel constitute activities with a substantial relationship to maritime activity. *See Strong v. B.P. Exploration & Production, Inc.* 440 F.3d 665, 669-670 (5th Cir. 2006); *Green v. Vermillion Corp.*, 144 F.3d 332, 336 (5th Cir. 1998). It is of no consequence that Nabors may not have been conducting traditional maritime activity, as only a single tortfeasor's participation in traditional maritime activity is necessary to satisfy the second inquiry of the connection to maritime activity test under *Grubart*. *Scarborough v. Clemco Industries*, 391 F.3d 660, 665-66 (5th Cir. 2004)(rejecting argument that under *Grubart* admiralty jurisdiction does not automatically apply to a non-maritime joint-tortfeasor just because it applies to a single co-joint-tortfeasor).

Based upon the foregoing analysis, the claims against Nabors are governed by federal maritime law. Since federal maritime law applies, the requisite conditions for state law to apply pursuant to OCSLA cannot be met. Accordingly, the Court need not address the remaining prongs of the OCSLA test, (1) whether the controversy arises on a situs covered by OCSLA, or (2) whether state law is inconsistent with federal law. Finally, because Plaintiff has designated his claims under Rule 9(h), and state law does not apply by virtue of OCSLA, Nabors is precluded from electing trial by jury on its claims.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff Glenn Duet's Motion to Strike

Jury Trial Demand of Third-Party Defendant (Rec. Doc. No. 13) is GRANTED.

New Orleans, Louisiana, this 5th day of May 2010.

_____
UNITED STATES DISTRICT JUDGE