UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GLENN DUET** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 09-3321** |
| | | **Ref. Case No. 10-2540** |
| **FALGOUT OFFSHORE, LLC, ET AL.** | * | **SECTION "L"** |

## ORDER & REASONS

Before the Court is Defendant Triangle Oil & Gas, Inc.'s ("Triangle") Motion for
Summary Judgment on Nabors Offshore Corp.'s Complaint. (R. 105). The Court, having
received extensive briefing and heard from the parties on oral argument, is now ready to rule.
For the following reasons, Triangle's Motion is DENIED.

## I. BACKGROUND

This case originally arose from personal injuries sustained in connection with three
incidents that occurred aboard a vessel. The original plaintiff, Glenn Duet, who has since settled
his claims in the case, was employed during these three incidents by Defendants Falgout
Offshore, LLC, and Minnie Falgout, LLC (collectively referred to as "Falgout") on the supply
boat, M/V MINNIE FALGOUT, in the capacity as captain. On April 12, 2007, while aboard this
vessel in navigable waters in the Gulf of Mexico, Mr. Duet sustained injuries when he was
caused to slip-and-fall due to a slippery, petroleum-based product that was on the deck. At the
time of these injuries, the M/V MINNIE FALGOUT was alongside the offshore platform
SUNDOWNER 22 owned by Third-Party Defendant Nabors Offshore Corporation ("Nabors").
Mr. Duet alleged that the petroleum-based liquid in which he slipped was dumped onto the

1

vessel from Nabors' platform.  He further alleged that as a result of this accident, he sustained injuries to his neck.  Then in February 2009, Mr. Duet suffered two additional injuries aboard the M/V MINNIE FALGOUT, both unrelated to Nabors.

On April 20, 2009, Mr. Duet filed his original Complaint alleging his injuries were caused by the negligence of Falgout in failing to furnish a safe workplace and the unseaworthiness of the M/V MINNIE FALGOUT.  (R. 1).  Falgout filed an Answer, Counterclaim, and Third-Party Complaint.  (R. 7).  In its Third-Party Complaint, Falgout tendered Nabors as a third-party defendant pursuant to Rule 14(c), alleging Nabors was responsible for any injuries sustained by Mr. Duet on April 12, 2007, when he slipped-and-fell on the deck of the vessel.  Nabors filed an Answer denying liability and raising affirmative defenses, as well as a jury demand.  (R. 12).

This matter was scheduled for trial on August 9, 2010, but beforehand Mr. Duet settled his claims against Falgout and Nabors.  (R. 88).  Pursuant to the terms of the agreement, Falgout and Nabors each paid $250,000 to fund the settlement, pending the future determination of an apportionment of fault.

Shortly thereafter, Nabors filed a Complaint in a separate case, *Nabors Offshore Corp. v. Falgout Offshore, LLC, et al.*, Case No. 10-2540, against Falgout, Triangle Oil & Gas, Inc. ("Triangle"), and Gulf Offshore Logistics, LLC ("Gulf"), alleging these parties breached their contractual obligations to defend and indemnify Nabors in the original *Duet* lawsuit.  According to Nabors, at the time of Mr. Duet's injury, its rig was being operated by Triangle pursuant to a contract between these parties.  Nabors also claims that at this time, Triangle contracted with Gulf for marine logistics and vessel services, and it was Gulf who hired Falgout to assist with

these contractual services.  Nabors additionally seeks contribution from Falgout in the event the

Court finds Nabors paid more in the settlement than it was responsible for.  On August 16, 2010,

the Court consolidated Nabors' case with the underlying, original case.  *See* (R. 89).

Falgout filed an Answer denying liability.  (R. 90).  Falgout also filed a Counter-Claim

against Nabors seeking indemnity and/or contribution.  *Id*.  Nabors filed an Answer to the

Counter-Claim contending it is not responsible for indemnity or contribution to Falgout.

Additionally, Triangle and Gulf each filed an Answer, denying liability and raising affirmative

defenses.  (R. 92, 117).

## II.      PRESENT MOTION

### A.      Movant-Triangle

On September 30, 2010, Triangle filed a Motion for Summary Judgment contending that

the Louisiana Oilfield Anti-Indemnity Act ("LOAA") prohibits Nabors' claim for indemnity

against Triangle, and thus, the claims against Triangle should be dismissed.  (R. 105).  At the

outset, Triangle alleges that since the claims against it arise from a contract to perform drilling

operations on a fixed platform, the Outer Continental Shelf Lands Act ("OCSLA") governs,

which in turn, requires that the law of the adjacent state, Louisiana, apply.  Triangle asserts

Louisiana law applies despite choice-of-law provisions in its contract with Nabors which require

the application of general maritime law or, alternatively, Texas law.

Triangle next contends that the LOAA applies under Louisiana law and prohibits Nabors'

claim for indemnity.  Triangle claims that since there was no judicial finding that Nabors was

free of fault, and rather a settlement occurred, the LOAA applies since it is applicable only

where there is negligence or fault on the part of the indemnitee, Nabors.  Triangle cites as

3

support, *Tanksley v. Gulf Oil Corp.*, 848 F.2d 515, 517 (5th Cir. 1988), in which the Fifth Circuit

held that the LOAA precluded an indemnitee from seeking indemnification subsequent to

settlement with the original plaintiff.  Triangle also cites in support the following cases which

have followed *Tanksley*: *A.M.C. Lifeboats, Inc. v. Apache Corp.*, 622 F.Supp.2d 355 (E.D. La.

2008); *Gaspard v. Offshore Crane & Equipment, Inc.*, 1998 WL 388597 (E.D. La. July 8, 1998);

and *BJ Services Co., USA v. Thompson*, 2010 WL 2024725, at *9 (W.D. La. May 14, 2010).

Finally, Triangle argues that Nabors' claim for insurance coverage from the contract is

void since under Louisiana Revised Statute § 9:2780(G), insurance may not be used to

circumvent the LOAA.

### B.    Respondent-Nabors

Nabors filed a Response in opposition to Triangle's Motion.  (R. 116).  Nabors argues

that it is not precluded under the LOAA from seeking indemnification from Triangle.  Nabors

contends that Triangle's argument that the LOAA precludes Nabors' indemnity claim is

misplaced since the settlement agreement provides that the Court is to make a finding of fault as

to Nabors and Falgout.  This, according to Nabors, distinguishes the present matter from the case

law cited by Triangle.  Nabors asks the Court to dismiss Triangle's Motion on this basis or,

alternatively, continue the Motion until after the hearing has been held on liability.  *See* (R. 115).


Nabors also characterizes Triangle's claim that OCSLA governs as lacking legal analysis

and factual support.  Nabors contends that the question of whether OCSLA or general maritime

law applies requires an analysis of several established factors.  Nabors also notes the

inconsistency of the following, (1) the Court previously held that general maritime law applies to

4

the entirety of the case, (2) the contract at issue contains a choice-of-law provision for general maritime law and Texas law, and (3) the work contracted for and performed involved drilling on the outer-continental shelf.

## III.   LAW & ANALYSIS

### A.   Standard of Review

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed R. Civ P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston*, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact which, under applicable law, may alter the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001).  A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).  "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact."  *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion."  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004).  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche*

*Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case on which they bear the burden of proof. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.

### B.    Which Law Governs?

There are three possible governing laws in the present matter. First, Louisiana law may apply, as Triangle urges, since the contract between Triangle and Nabors involves drilling on a fixed-platform on the outer continental shelf, triggering OCSLA, which in turn, requires the application of Louisiana law. Second, general maritime law may apply since the contract at issue selects general maritime law as the applicable law, and this Court previously held in its Order & Reasons of May 5, 2010 (R. 45), that general maritime law was applicable to the original tort claims of Mr. Duet. Third, Texas law may apply since the contract at issue selects Texas law as the alternative applicable law. Notably, the LOAA will apply to Nabors' claims against Triangle only if Louisiana law, by virtue of the OCSLA, applies. Thus, the Court will now discuss each of these potentialities and determine which applies to the facts in the present case.

To determine whether OCSLA requires application of the adjacent state's law in the

present matter, the Court must look to the three-part test formulated by the United States

Supreme Court in *Rodrigue v. Aetna Cas. & Surety Co.*, 395 U.S. 352 (1969).  This test requires

that, "(1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil seabed, or

artificial structure permanently or temporarily attached thereto).  (2) Federal maritime law must

not apply of its own force.  (3) The state law must not be inconsistent with federal law."

*Rodrigue*, 895 F.2d at 1047.  When a case involves a contractual indemnity claim as the present

case does, the Fifth Circuit holds,

> [A] contractual indemnity claim (or any other contractual dispute) arises on an OCSLA
> situs if a majority of the performance called for under the contract is to be performed on
> stationary platforms or other OCSLA situses enumerated in 43 U.S.C. § 1333(a)(2)(A).
> It is immaterial whether the underlying incident that triggers the indemnity obligation
> occurs on navigable waters or on a platform or other OCSLA situs." *Grand Isle
> Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009).

Applying this holding to the present matter, the first prong of the *Rodrigue* test is satisfied since

it is undisputed that the contract between Triangle and Nabors was specifically for drilling on a

platform fixed on the outer-continental shelf.

As to the second prong of the *Rodrigue* test, the Court must determine whether

federal maritime applies of its own force.  The Court previously held in its Order & Reasons of

May 5, 2010, that Mr. Duet's claims against Falgout and Falgout's Third-Party Demand against

Nabors were all governed by general maritime law.  (R. 45).  The Court applied the Supreme

Court's test in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock, Co.*, 513 U.S. 527, 534

(1995), to the facts arising from Mr. Duet's tort claims and concluded there was both a potential

disruptive impact on maritime commerce and a substantial relationship to traditional maritime

activity.  *Id.*  However, the *Grubart* test would not apply to Nabors' contractual indemnity claim

against Triangle since the *Grubart* test requires tort allegations and there are none involving

Triangle. *See id.* Triangle was not brought into the litigation until after Mr. Duet's tort claims

were settled. In order for federal admiralty law to apply, the contract between Nabors and

Triangle must constitute a maritime contract.

The legal framework for determining whether a contract is maritime is set out by the

Fifth Circuit in *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313 (5th Cir. 1990). Under *Davis*,

there are two parts to the inquiry: (1) an examination of the "historical treatment in the

jurisprudence," and (2) a six-factor "fact specific inquiry." *Id*. at 316. The six-factors are:

(1) What does the specific work order in effect at the time of the injury provide?
(2) What work did the crew assigned under the work order actually do?
(3) Was the crew assigned to work aboard a vessel in navigable waters?
(4) To what extent did the work being done relate to the mission of that vessel?
(5) What was the principal work of the injured worker?
(6) What work was the injured worker actually doing at the time of the injury? *Id*.

The maritime or non-maritime status of the contract ultimately depends upon the contract's

"nature and character," not on its place of execution or performance. *Id.* In the present case,

factors one through four favor the contract's non-maritime status since the contract provides for

drilling on a platform situated on the outer-continental shelf and has no relation to the activities

on the vessel on which Mr. Duet was injured. However, factors five and six favor the contract as

one under maritime law since Mr. Duet was employed on the vessel as captain and was in this

capacity during his injuries. Considering these factors all together, the Court finds that the

contract is a non-maritime contract since its "nature and purpose" relate to the non-maritime

activity of drilling on a fixed platform on the outer-continental shelf, and the only maritime

connection is the discharge of materials onto the vessel which caused one of Mr. Duet's three

injuries.

8

Finally, under the third and final prong of the Rodrigue test, the Court must determine whether the state law, which would apply by virtue of OCSLA, is inconsistent with federal law. *Rodrigue*, 895 F.2d at 1047.  The parties do not dispute that if OCSLA applies, Louisiana law is the applicable law; thus, the Court must determine whether Louisiana law, and specifically the LOAA for purposes of the present Motion, is inconsistent with federal law.  The Fifth Circuit has concluded that the LOAA does not conflict with federal law.  *See Matte v. Zapata Offshore Co.*, 784 F.2d 628, 630 (5th Cir. 1986), *cert. denied*, 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986)(rejecting argument that LOAA conflicts with federal law).  Thus, Nabors' contractual indemnity claim against Triangle is governed by Louisiana law by virtue of application of the OCSLA.

Nonetheless, the Court must also consider whether the choice-of-law provisions in the contract between Nabors and Triangle override any other legal basis for determining the applicable law.  As discussed above, the contract states that it shall be governed by general maritime law or, in the alternative, Texas law.  Neither of these laws would apply of their own right since based upon the analysis above, OCSLA would be the applicable law.  The Fifth Circuit addressed an almost identical issue in *Matte v. Zapata Offshore Co.*, 784 F.2d 628 (5th Cir. 1986).  In *Matte*, the Fifth Circuit was presented with the question of whether a choice-of-law provision selecting general maritime law in an indemnity contract trumped the application of OCSLA which applied because the case involved a personal injury claim arising from work on a rig on a fixed platform located on the outer-continental shelf.  *See id.* at 629.  The Fifth Circuit held that the choice-of-law provision "violates the public policy of both Louisiana and the United States," and voided the provision of the contract selecting general maritime law instead

9

of OCSLA as the governing law.  *Id*. at 631-32.  Looking to *Matte*, the Court finds that the choice-of-law provisions in the contract between Nabors and Triangle are void since they conflict with the application of OCSLA and the LOAA.  Thus, Louisiana substantive law applies to Nabors' claims against Triangle by virtue of OCSLA.

### C.       Does the LOAA Require Dismissal of Nabors' Claims Against Triangle?

The parties next dispute whether the LOAA invalidates the indemnity provision in the contract between Nabors and Triangle.  The Fifth Circuit has characterized the LOAA as follows,

> The [LOAA] was enacted generally to protect Louisiana oilfield contractors from over reaching principals who force the contractors through indemnity agreements to bear the risk of the principal's negligence.  The [LOAA] therefore nullifies indemnity agreements which protect the principal against its own fault at the expense of the contractor if the indemnity provisions are part of an agreement pertaining to an oil or gas well.  The [LOAA] is broadly written and has been broadly interpreted by the Louisiana courts and [the Fifth Circuit].  *Roberts v. Energy Dev. Corp*., 104 F.3d 782, 784 (5th Cir. 1997).

The contract between Nabors and Triangle involved drilling for oil and contains an indemnity provision, thus the LOAA is triggered.  However, the Court's inquiry does not end here.  Next, the Court must determine, as mandated by the Louisiana Supreme Court in *Meloy v. Conoco, Inc*., 504 So. 2d 833, 839 (La. 1987), whether Nabors, as the indemnitee under the contract, was negligent or at fault in the underlying case.  If Nabors was negligent or at fault, then the indemnity provision is nullified; if Nabors was not, the indemnity provision remains.  *See id.*

In *Meloy*, the Louisiana Supreme Court was presented with certified questions from the Fifth Circuit relating to the meaning and application of the LOAA.  In response to these questions, the Court rendered two conclusions relevant to the present case.  One of these

10

conclusions clarified that "[t]he [LOAA] nullifies completely any provision in any agreement that requires indemnification where there is any negligence or fault on the part of the indemnitee." *Meloy,* 504 So. 2d at 839. The other conclusion focused on determining this negligence or fault. With regard to such a determination, the Court reasoned,

> [T]he indemnitor's obligation for cost of defense cannot be determined until there has been a judicial finding that the indemnitee is liable or that the charges against it were baseless. *Whether an oil company (indemnitee) is free from fault and thus outside the scope of the [LOAA] can only be determined after trial on the merits. Id.* (emphasis added).

It is this last sentence upon which the present Motion turns, that is, whether a prior trial on the merits is the only method of establishing fault of an indemnitee for purposes of the LOAA, or whether any judicial finding of liability, even post-settlement, is sufficient. The Court will now discuss the relevant case law on this issue. Beginning with *Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1247-48 (5th Cir. 1988), the Fifth Circuit concluded that the LOAA did not apply to invalidate an indemnity provision where the underlying personal injury claim was barred under the Longshore and Harbor Workers' Compensation Act, raising a legal obstacle to a finding of negligence on part of the indemnitee.

Shortly thereafter, in *Tanksley v. Gulf Oil Corp.*, 848 F.2d 515 (5th Cir. 1988), the Fifth Circuit reached a wholly different conclusion. In *Tanksley*, the Court began its analysis by recognizing its holding in *Melancon* that the LOAA did not apply because "as a matter of law, there could be no determination of fault" since the Longshore and Harbor Workers' Compensation Act barred any legal remedy other than compensation benefits. 848 F.2d at 517. The Court then distinguished the facts before it from *Melancon*, noting that instead of a legal barrier to finding negligence, the parties, by settling their claims, made the choice to forego a

negligence determination by trial.  *Id*. at 517-18.  According to the Court, in this factual

situation, as opposed to that in *Melancon*, the LOAA nullified the indemnity agreement between

the parties.[1]  *Id*. at 518.

       The Fifth Circuit in *American Home Assurance Co. v. Chevron USA, Inc*., 400 F.3d

265, 270 (5th Cir. 2005), more recently recognized *Tanksley* as "further[ing] the aims of the

[LOAA] by protecting contractors from having to litigate an oil company's fault when the oil

company had an opportunity to adjudicate the matter in the previous underlying action."

However, in dicta, the Court noted the outright rejection of *Tanksley* by two of the five Louisiana

appellate courts.[2]  *Id*. at 270 n. 15.  Indeed, both *Ridings v. Danos & Curole Marine Contractors,*

*Ins.*, 1997-2710 (La. App. 4 Cir. 8/12/98); 723 So. 2d 979, and *Phillips Petroleum Co. v. Liberty*

*Services*, 95-124 (La. App. 3 Cir. 5/31/95); 657 So. 2d 405, have rejected *Tanksley*.  In *Ridings*,

the Louisiana Court of Appeals, Fourth Circuit, challenged *Tanksley*, stating "[w]hether the

indemnitee was negligent or at fault (strict liability) in causing injury to the original plaintiff can

be determined at trial between the indemnitee and the indemnitor even after the indemnitee has

---

[1]The Western District of Louisiana recently looked to *Tanksley* to reach a similar conclusion in *B.J. Services Co., USA v. Thompson*, 2010 WL 2024725 (W.D. La. May 14, 2010). Therein, the court held that because an indemnitee settled its underlying claims without a determination of fault, it was precluded by the LOAA from seeking indemnity from its indemnitor.  *B.J. Services*, 2010 WL 2024725 at *8.  Similarly, this Court in a slightly older case, *Gaspard v. Offshore Crane & Equip., Inc*., 1998 WL 388597, at *3 (E.D. La. July 8, 1998), held that an indemnitee who settled the underlying claims against it, was precluded from pursuing a claim for contractual indemnity consistent with *Tanksley*.

[2]This Court in *A.M.C. Liftboats, Inc. v. Apache Corp*., 622 F.Supp.2d 355, 361 (E.D. La. 2008), cited this dicta in *American Home Assurance* but declined to follow the reasoning of the state appellate courts, choosing to follow *Tanksley* instead.  In doing so, the Court held that the indemnitee, by settling the underlying claims, was barred by the LOAA from pursuing indemnity claims.  *Id*. at 361-62.

settled with the original plaintiff." 723 So. 2d at 983 n.2. Similarly, in *Phillips* the Third Circuit held that the LOAA does not prevent "one seeking indemnification from proving freedom from 'negligence or fault (strict liability)' in an action separate from the original litigation raising that issue." 657 So. 2d at 409. The Louisiana Supreme Court has yet to address the *Tanksley* decision, but in dicta has stated that it finds logic in both the *Tanksley* conclusion, as well as that in *Ridings* and *Phillips*. *See Fontenot v. Chevron USA, Inc*., 95-1425 (La. 7/2/96); 676 So. 2d 557, 563 n.7.

In the present matter, Nabors entered into a settlement agreement, along with Falgout, and Mr. Duet, the former plaintiff. The settlement agreement did not resolve the respective fault of either Nabors or Falgout. Thus, at first glance, it appears that the case falls within the *Tanksley* pattern, and nullification of Nabors' indemnity agreement with Triangle is warranted. However, the case differs from *Tanksley* in that the settlement agreement recognized that the Court would subsequently make a finding as to the respective liabilities of Nabors and Falgout, who each contributed $250,000.00 to settlement, and reapportion each party's contribution based upon this finding if appropriate. This is consistent with the Court's understanding at the time of settlement and is memorialized in the settlement documents forwarded to the Court by the parties. Moreover, the Court recently scheduled pretrial and trial dates to resolve the liability and contribution issues between Nabors and Falgout. *See* (R. 126).

Considering the applicable law and relevant facts, the Court finds that the unique facts of the present case warrant a carve-out to the *Tanksley* rule. The facts do not present a *Melancon* situation in which a finding on negligence is legally precluded; nor do they present a *Tanksley* situation in which the parties' choice to settle their claims prevents a finding of

13

negligence.  Rather, here, the underlying parties reached a settlement, but in doing so conditioned it on a future allocation of fault by the Court.  If the Court applied the *Tanksley* rule to grant the present Motion, and thereafter found Nabors free of fault, Triangle would evade its contracted-for obligation to indemnify Nabors.[3]  Thus, the Court finds that for purposes of the present case, the LOAA does not automatically apply to invalidate the indemnity agreement between Nabors and Triangle solely because the underlying parties settled their claims.  Instead, because the parties contemplated a subsequent trial as part of their settlement agreement, whether or not the LOAA applies will be properly determined by the outcome of this trial on the liability and contribution of Nabors and Falgout.

Additionally, because the Court finds at this time that the applicability of the LOAA will turn on the outcome of the upcoming trial, it also denies Triangle's Motion insofar as it seeks a judgment from the Court regarding the insurance coverage provision in its contract with Nabors pursuant to La. Rev. Stat. § 9:2780(G).

IV.     CONCLUSION

For the foregoing reasons, Triangle's Motion for Summary Judgment (R. 105) is DENIED.


New Orleans, Louisiana, this 2nd day of December 2010.

U.S. District Judge

---

[3]As noted previously, the Louisiana appellate courts have embraced the concept of determining negligence or fault post-settlement for purposes of the LOAA.  *See Ridings*, 723 So. 2d 979, 983 n.2; *Phillips*, 657 So. 2d 405, 409.  Even the Louisiana Supreme Court has recognized there is logic in this concept.  *See Fontenot*, 676 So. 2d 557, 563 n.7.