UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **GLENN DUET** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 09-3321** |
| | | **Ref. Case No. 10-2540** |
| **FALGOUT OFFSHORE, LLC, ET AL.** | * | **SECTION "L"** |

**ORDER & REASONS**

Before the Court is Gulf Offshore Logistics, LLC's ("Gulf") Motion for Summary Judgment (R. Doc. 169). The Court has received briefing and heard oral argument from the parties regarding the Motion. Now that it has considered the arguments raised by the parties, along with the applicable facts and law, the Court is prepared to rule on the issue at hand. For the following reasons, Gulf's Motion for Summary Judgment is DENIED.

**I.   BACKGROUND**

This case originally arose from personal injuries sustained while working aboard a vessel, and was later expanded to include maritime contract disputes between contractors and subcontractors, all of which has settled except for the single claim for attorneys' fees and costs at issue in the present Motion. The relevant facts and procedure of the litigation are as follows.

The personal injury plaintiff, Glenn Duet, was employed by defendants Falgout Offshore, LLC, and Minnie Falgout, LLC (collectively referred to as "Falgout") on the supply boat, M/V MINNIE FALGOUT, in the capacity as captain. Between 2007 and 2009, Mr. Duet sustained three separate slip-and-fall injuries on the vessel, one of which involved slipping on a substance discharged on the deck by the offshore platform SUPER SUNDOWNER XXII owned by third-

party defendant Nabors Offshore Corporation ("Nabors").

On April 20, 2009, Mr. Duet filed his original Complaint alleging his injuries were caused by the negligence of Falgout in failing to furnish a safe workplace and the unseaworthiness of the M/V MINNIE FALGOUT, and seeking damages for his personal injuries, pain and suffering, lost wages, and medical expenses, as well as maintenance and cure. (R. Doc. 1)(No. 09-3321). He subsequently filed a First Amended Complaint designating his claim as one in admiralty pursuant to Rule 9(h). (R. Doc. 6).

Falgout filed an Answer, Counterclaim, and Third-Party Complaint. (R. Doc. 7). In its Third-Party Complaint, Falgout tendered Nabors as a Third-Party Defendant pursuant to Rule 14(c), alleging Nabors was responsible for any platform-caused injuries sustained by Plaintiff. Nabors filed an Answer denying liability and raising affirmative defenses, as well as a jury demand. (R. Doc. 12).

This matter was scheduled for trial on August 9, 2010, but beforehand Plaintiff settled his claims against Falgout and Nabors. (R. Doc. 88). Each Falgout and Nabors paid the Plaintiff $250,000. These payments were the source of indemnity claims between Falgout and Nabors which were later resolved through subsequent settlement. *Id*.

On August 16, 2010, the Court consolidated *Nabors Offshore Corp. v. Falgout Offshore, LLC, et al.*, Case No. 10-2540, with the *Duet* case. (R. Doc. 89). This matter was filed by Nabors against Falgout, Gulf Offshore Logistics, LLC ("Gulf"), Triangle Oil & Gas, Inc. ("Triangle"), and Maritime Logistics, Inc. ("Maritime") alleging breach of contract against the defendants for their failure to defend and indemnify Nabors in the *Duet* suit. *See id;* (R. Doc. 146). Falgout filed a Counterclaim against Nabors. *See* (R. Doc. 90). Triangle filed a

2

Crossclaim against Gulf, *see* (R. Doc. 130), and a Third Party Demand against Maritime, *see* (R. Doc. 143), alleging these parties owe it indemnity and defense.

The relevant facts for the *Nabors* case are as follows. On January 4, 2004, non-party SPN Resources, LLP entered into a Development Agreement with defendant Triangle Oil & Gas, Inc. ("Triangle") in which Triangle agreed to perform drilling operations in the Gulf of Mexico.[1] *See* (R. Doc. 148, Ex. C). On August 15, 2005, Triangle entered into the Master Service Agreement with Gulf which obligated Gulf to provide a vessel for Triangle's drilling operations. *See* (R. Doc. 148, Ex. B). Gulf had previously entered into the Master Time Charter with Maritime which obligated Maritime to procure vessels for Gulf. *See* (R. Doc. 148, Exs. A, E). Accordingly, Maritime, in turn, secured the M/V MINNIE FALGOUT from Falgout, upon which Triangle used in conducting its drilling operations. *See* (R. Doc. 148, Ex. F). Additionally, on September 25, 2006, Triangle entered into the Daywork Drilling Contract with plaintiff Nabors under which Nabors provided the SUPER SUNDOWNER XXII platform and personnel as required under the Development Agreement between SPN and Triangle. *See* (R. Doc. 148, Ex. D). The indemnity and defense claims arise from these contracts between the parties.

The parties to the *Duet* and *Nabors* cases have settled their claims, with the exception of release of certain claims and the issue involved in the present Motion.

## II.   PRESENT MOTION

### A.   Gulf's Motion

Gulf filed a Supplemental Memorandum, contending that pursuant to the Master Time

---

[1]This is a disputed fact.

Charter entered into by it and Maritime, Maritime is obligated to pay its attorneys' fees and costs incurred in defending and indemnifying the claims brought against it by Triangle and Nabors. *See* (R. Doc. 176).  Gulf refutes that just because it was not directly sued by Mr. Duet, it is not entitled to indemnity and defense; rather, it argues because the contract claims against it arise from and are related to Mr. Duet's personal injuries, it is owed these obligations under the language of the Charter.  Additionally, Gulf clarifies that it is seeking attorneys' fees and costs occurred in defending against the contract claims, not those incurred in establishing its right to indemnity.

    **B.**    **Maritime's Response**

Maritime filed a Response in opposition to Gulf's Motion, (R. Doc. 173), arguing that the Master Time Charter between Gulf and Maritime does not provide for payment of attorneys' fees incurred by Gulf while defending itself from the contractual liability claims brought against it. Maritime breaks down the indemnity provision in the Master Time Charter into three separate parts, (1) a general unidentified indemnity obligation, (2) a specific indemnity provision to defend and indemnify Gulf and its customers from personal injury claims, which is not at issue here, and (3) a specific indemnity provision requiring Maritime to indemnify and defend Gulf only to the extent that Gulf is required to do the same to its customers, which does not exist or has not been determined at this time.  According to Maritime, none of this indemnity-related language requires it to pay Gulf's attorneys' fees and costs.

**III.**    **LAW & ANALYSIS**

    **A.**    **Standard of Review**

Summary judgment will be granted only if the pleadings, depositions, answers to

interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston*, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case on which they bear the burden of proof. *Patrick*

*v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).  A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.

  **B.** **What Law Governs the Master Time Charter?**

  The Master Time Charter, entered into by Gulf and Maritime, and the related Master Service Contract, entered into by Triangle and Gulf, both of which involve procuring a vessel for Triangle's drilling operations, are at issue in the present Motion, and thus, the Court must first determine the governing law thereof.  It does not appear to be disputed by the parties that these contracts are governed by federal maritime law since the nature of each is maritime services or transactions.  *See Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986)("Whether a particular contract can be characterized as maritime depends on the nature and character of the contract, not on the situs of its performance or execution.").  This conclusion is supported by the applicable case law.  *See e.g. Theriot*, 783 F.2d at 538-39(concluding contract governed by federal maritime law in part because the main piece of equipment to be serviced thereunder was a vessel).  Indeed, "where a party's obligation for supplying a vessel is more than incidentally related to its contractual duties, [] the contract [is] considered to be maritime."  *AGIP Petroleum Co., Inc. v. Gulf Island Fabrication, Inc.*, 920 F.Supp. 1330, 1339 (S.D. Tex. 1996)(citing *Domingue v. Ocean Drilling & Exploration Co.*, 923 F.2d 393, 396-97 (5th Cir. 1991)).  Thus, the Court finds that these contracts are governed by maritime law.

  **C.** **Interpretation of Maritime Contracts**

  "'A maritime contract containing an indemnity agreement...should be read as a whole and its words given their plain meaning unless the provision is ambiguous.'"  *Becker v. Tidewater*,

586 F.3d 358, 369 (5th Cir. 2009)(quoting *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 956 (5th Cir. 1984)).  "A contract is not ambiguous if 'its language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation.'" *Cargill, Inc. v. Kopalnia Rydultowy Motor Vessel*, 304 Fed. App'x 278, 282 (5th Cir. 2008)(quoting *Chembulk Trading, LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n. 6 (5th Cir. 2004)). "Where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together." *Id*. "Further, indemnity agreements 'should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties.'" *Brown v. Sea Mar Mgmt., LLC*, 288 Fed. App'x 922, (5th Cir. 2008)(quoting *Corbitt v. Diamond M. Drilling Co.,* 654 F.2d 329, 332 (5th Cir. 1981)).

### D.     Attorneys' Fees & Costs

Pursuant to the applicable case law discussed above, the Court will begin its inquiry into the attorneys' fees and costs sought in Gulf's Motion by first examining the language of the contract entered into by Gulf and Maritime, the Master Time Charter.  The indemnity provision at issue therein provides,

> It is further recognized that [Gulf] may be obligated by its customer(s) to provide certain indemnification to the customers(s), its affiliates, joint venturers, joint interest owners, subsidiaries, agents, employers, contractors, subcontractors and others with whom customer(s) may be contracted.  It is the intent of this Master Time Charter that these obligations be assumed by [Maritime].  Notwithstanding said insurance provisions above, it is further understood and agreed that [Maritime] agrees to defend, indemnify and hold [Gulf] and its customer(s), if any, and the customers' affiliates, joint ventures, joint interest owners, subsidiaries, agents, employers, contractors, subcontractors and other with whom customer(s) may be contracted, harmless from and against any claim for damage to property owned by any person or entity, or for personal injury, illness to or death of any person, regardless of how such damage, injury, death or illness arose, or in anyway, directly or indirectly, arising out of the operation, manning, navigation or other

> activities of the vessel, including loading and off-loading of cargo and personnel, and regardless of whether caused by the sole or contributing fault, negligence or strict liability (including unseaworthiness of vessel) of [Maritime], [Gulf], [Gulf's] customer(s), or any other person or entity.  Notwithstanding the foregoing, the indemnity provided to [Gulf] and customer(s) hereunder shall be no greater than the indemnity owed by [Gulf] to customer(s) under the terms of [Gulf's] own agreement, if any, with its customer(s).
> (R. Doc. 148, Ex. A).

Upon examination of this contract, the Court finds no express language requiring Maritime to compensate Gulf for any attorneys' fees or costs.  However, this finding does not end the Court's inquiry.

In the Fifth Circuit, under a general indemnity provision in a maritime contract, such as the one at issue here, an indemnitee is entitled to recover attorneys' fees incurred in defending against a claim covered by the indemnity provision.  *See Becker v. Tidewater, Inc.*, 586 F.3d 358, 375 (5th Cir. 2009).  This raises the question of whether Gulf has defended itself against a covered claim.  There are two "covered claims" in the Master Time Charter, (1) those against Gulf for "any claim for damage to property owned by any person or entity, or for personal injury, illness to or death of any person, regardless of how such damage, injury, death or illness arose, or in anyway, directly or indirectly, arising out of the operation, manning, navigation or other activities of the vessel," and (2) indemnity obligations owed by Gulf to its "customers."  *See* (R. Doc. 148, Ex. A).  The Court now examine these issues.

### 1.  *Attorneys' Fees & Costs Arising From Contract Claims Against Gulf*

As noted above, the Master Time Charter requires Maritime to indemnify and defend Gulf for "any claim for damage to property owed by any person or entity, or for personal injury, illness to or death of any person, regardless of how such damage, injury, death or illness arose, or in anyway, directly or indirectly, arising out of the operation, manning, navigation or other

8

activities of the vessel*.*" *Id.* It is undisputed that the claims against Gulf in the litigation are not for either property damage or personal injury, but are solely grounded in contract. Thus, the express language of the Master Time Charter prevents Gulf from recovering attorneys' fees and costs from Maritime. However, depending upon the language of the indemnity provision and relevant circumstances, the Fifth Circuit has interpreted an indemnity provision which is ambiguous as to whether it covers contract claims, to extend to such claims. In order to determine whether this is the case here, the Court will review relevant jurisprudence on the issue.

Beginning with *Breaux v. Halliburton Energy Services*, 562 F.3d 358, 364 (5th Cir. 2009), the Fifth Circuit held that an indemnity provision covering "*all liability arising out of* all claims, liabilities, demands, actions, damages, losses, and expenses for personal or bodily injury, illness, disease, or death" required indemnification of contractual liability. The Circuit noted that the indemnity agreement did not limit indemnity to only tort claims for personal injury, but included "all liability" arising out of such claims. *Id*. at 365. In *Sumrall v. Ensco Offshore Co.*, 291 F.3d 316 (5th Cir. 2002), the Fifth Circuit reached a similar conclusion. Therein, the Fifth Circuit held that the indemnity provision covered contractual obligations. This provision stated that indemnity was required for "all claims, losses, costs, demands, damages, suits,...and causes of action of whatsoever nature or character...and whether arising out of contract, tort." *Id*. at 319, n. 4. Likewise, in *Lirette v. Popich Brothers Water Transport, Inc.*, 699 F.2d 725 (5th Cir. 1983), the Fifth Circuit held that an indemnity provision in a maritime contract covered contract obligations. The provision at issue required indemnity "from any claims or suits resulting from injury or damage to [certain employees] or third persons or property arising out of, or in any way connected to the operation of the vessel." *Id*. at 726 n. 4. The Circuit noted that there was "no

9

distinction being made between so-called contractual or so-called tortious liability." *Id*. at 728.

However, in *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329 (5th Cir. 1981), which Maritime cites and relies upon, the Fifth Circuit reached an entirely different conclusion. Therein, the Fifth Circuit refused to extend an indemnity provision in a maritime contract to cover contractual liability. *See id.* This provision provided indemnity "against all claims, suits, liabilities and expenses on account of personal injury...arising out of or in connection with performance of this Order." *Id*. at 333. The Circuit relied upon this contractual language, noting that the absence of express language requiring indemnity for contractual liability, as well as no facts which indicated such intention. *See id.* at 333-34.

Recently, this Court in *Ebanks v. Offshore Liftboats, LLC*, 2009 WL 3834365 (E.D. La. Nov. 10, 2009), addressed whether an indemnity provision in a maritime contract provided indemnity and defense for contractual obligations. The Court reviewed the very cases discussed above to hold that contractual liability was encompassed by the indemnity provision which included "all claims, losses, costs, demands, damages, suits..." within the indemnity obligation, and defined "claims" as including "claims, demands,...liabilities...of any kind and nature...which in any way arise out of or are related to...[the contract]." *Id*. at *5.

As a general rule, "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986). Here, the indemnity provision of the Master Time

Charter requires Maritime to indemnify and defend Gulf and its subcontractors "from and against any claim for damage to property...or for personal injury, illness to or death of any person." (R. Doc. 148, Ex. A). When compared with the indemnity provisions in the cases discussed above, the provision here is markedly narrow. It is absent of expansive language such as "all liability" "arising out of," "in any way connected," or "causes of action of whatsoever nature," which is found in the cases where contract claims were indemnified. Accordingly, the Court finds that the parties did not intend to include indemnity and defense for contract claims brought against Gulf, which also means that Gulf is not entitled to attorneys' fees and costs from Maritime for its defense of the contract claims against it since such claims are not "covered" by the indemnity provision.

### 2.   *Attorneys' Fees & Costs Arising From Gulf's Indemnity Obligation*

As the Master Time Charter contemplates, Gulf does stand as an indemnitee in another contract, the Master Service Agreement. The relevant provision therein provides,

> [Gulf] assumes full responsibility for and agrees to release, protect, *Defend*, *indemnify* and hold harmless [Triangle] from and against all Losses related to, personal injury, illness, death or property damage of [Gulf and its subcontractors] which arises out of, in connection with, incident to or results directly or indirectly from this Contract or the Services, Goods or Equipment provided under this Contract, regardless of whether caused or contributed to, in whole or in part, by the sole or concurrent negligence, strict liability or fault of [Triangle], the unseaworthiness of any vessel or a pre-existing condition. (R. Doc. 148-6)(emphasis added).

Thus, if Gulf defended and/or indemnified Triangle under this provision, pursuant to relevant case law, because this is a "general indemnity provision" Gulf would be entitled to recover its attorneys' fees and costs incurred in doing so. Assuming this is the case, Maritime's obligation to assume these obligations of Gulf under the Master Time Charter would be triggered and Maritime would be obligated to reimburse Gulf for its obligations to Triangle. However, this

11

assumption has no place here since Gulf concedes that it has not defended or indemnified Triangle, but instead has defended itself against the claims by Nabors and Falgout that it owes them indemnity and defense.

In distinguishing when attorneys' fees and costs are permitted under a general indemnity provision of a maritime contract, the Fifth Circuit concludes that a party is not entitled to recover such compensation when it is incurred in litigating a right to indemnification, unless of course the contract expressly provides therefor. *See Becker v. Tidewater, Inc.*, 586 F.3d 358, 375 (5th Cir. 2009); *Jones v. Francis Drilling Fluids, Ltd.*, 642 F.Supp.2d 643, 672 (S.D. Tex. 2009). Thus, Gulf is not entitled to fees and costs from Maritime simply because Gulf expended such fees and costs in defending *itself* against the breach of indemnity and defense obligations claims against it in the present litigation. This conclusion is supported by the plain language of the Master Time Charter, as well as applicable law.

## IV. CONCLUSION

For the foregoing reasons IT IS ORDERED that Gulf's Motion for Summary Judgment (R. Doc. 169) is DENIED.

New Orleans, Louisiana this 23rd day of May 2011.

_____
U.S. District Judge